UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL KIRKLAND,<br><br>              Plaintiff,<br><br>   v.<br><br>EMHART GLASS S.A., et al.,<br><br>              Defendants. | CASE NO. C10-5125BHS<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. 52). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On February 25, 2010, Plaintiff Michael Kirkland ("Kirkland") filed the original complaint in this action alleging claims against Defendants relating to an accident that occurred on November 26, 2008, at Kirkland's place of employment, the Cameron Family Glass Packaging plant ("Cameron"). Dkt. 1. On February 16, 2011, Defendants filed their motion for partial summary judgment (Dkt. 52). On March 7, 2011, Kirkland filed a response to Defendants' motion which he titled as an opposition and cross-motion for partial summary judgment. Dkt. 57. However, because the Court's scheduling order

ORDER - 1

required that dispositive motions be filed no later than February 16, 2011, the Court will not consider Kirkland's response as a cross-motion for summary judgment. On March 11, 2011, Defendants replied (Dkt. 69).

## II. RELEVANT FACTUAL BACKGROUND

Solely for purposes of deciding the instant motion, the Court will assume the facts as stated in Defendants' motion for partial summary judgment (Dkt. 52 at 2-11) because, even when such facts are taken as true, Defendants' motion must be denied.

## III. DISCUSSION

In his complaint, Kirkland alleges as follows:

> 4.1 Defendant Emhart Glass is liable for Mr. Kirkland's injuries because the subject Individual Section Machine was not reasonably safe in its design, and because adequate warnings were not provided with the product or after manufacture, and as such, the subject Individual Section Machine was unsafe to an extent beyond that contemplated by an ordinary user and consumer as set forth in RCW 7.72.030.
> 4.2 The defects in the design of the subject Individual Section Machine include, but are not limited to, the following: (a) the flip plate at the location where Michael Kirkland was working did not extend as far as the trapezoidal foot pad at that location, and (b) Defendant Emhart Glass failed to provide a reasonably safe means of protecting workers from exposure to injury resulting from contact with red hot bottles on the conveyor when performing mold changes.
> 4.3 Defendant Emhart Glass is strictly liable to Plaintiff because the Individual Section Machine was unsafe to an extent beyond that which would be contemplated by an ordinary user.

Dkt. 1 at 11-12. In the instant motion, Defendants state that they anticipate Kirkland will attempt to bring at trial six theories of liability to support his claim under Washington's Product Liability Act ("WPLA") and seek summary judgment on the following five theories: (1) failure to warn based upon a risk-utility analysis; (2) failure to warn based upon a consumer expectations test; (3) a post-manufacturing failure to warn based upon a negligence standard; (4) design defect based upon a consumer expectations test; and (5) a general strict liability claim based upon consumer expectations. Dkt. 52 at 1. Thus,

ORDER - 2

Defendants seek summary judgment of all of Kirkland's theories of liability with the exception of a design defect based upon a risk-utility test. *Id.*

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

ORDER - 3

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  WPLA**

The WPLA, RCW 7.72 et seq. , is the exclusive remedy for product liability claims in Washington. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn. 2d 847, 853 (1989). The WPLA is preemptive and its scope is broadly defined to include any claim or action brought for harm caused by the product. *Id*. The purpose of the statute is to eliminate common law remedies and provide a single cause of action. *Id*. at 854. The WPLA creates a single cause of action for product-related harm with specified statutory requirements for proof. *Stanton v. Bayliner Marine Corp*., 123 Wn. 2d 64, 71 (1993). *See also, Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299 (1993) (stating that the WPLA creates a single cause of action for product-related harms, and supplants previously existing common law remedies, including common law actions for negligence).

The WPLA imposes liability on a product manufacturer if its product is not reasonably safe as designed (design defect claim) or because adequate warnings or instructions were not provided (failure to warn claim). RCW 7.72.030(1). In a failure to warn claim, the manufacturer may be liable for a danger that is either known at the time of manufacture, or that becomes known after manufacture. RCW 7.72.030(1)(b) and (c). Under Washington law, a plaintiff may establish liability by using either a risk-utility test or a consumer expectation test for both design defect and failure to warn claims. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747 (1992) (en banc) (failure to warn claim); *Falk v. Keene Corp.*, 113 Wn.2d 645, 782 (1989) (en banc) (design defect claim). Although RCW 7.72.030 uses the term "negligence," strict liability is the applicable standard for a failure to warn or a design defect claim maintained under RCW 7.72.030(a)

ORDER - 4

or (b). *Ayers*, 117 Wn.2d at 765; *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 326-327 (1999) (citing *Falk*, 113 Wn.2d at 653). However, for failure to warn claims involving a danger that becomes known after manufacture, a negligence standard is applied. *Ayers*, 117 Wn.2d at 765.

A plaintiff who seeks to establish liability of a manufacturer under RCW 7.72.030(1)(a) or (b) may do so in two ways. *Soproni*, 137 Wn.2d at 326-327 (citing *Falk*, 113 Wn.2d at 653). One way is referred to as the "consumer expectations" test, "which requires the plaintiff to show that the product was 'unsafe to an extent beyond that which would be contemplated by the ordinary consumer.'" *Id*. at 327. The second way a plaintiff may attempt to establish liability is the "risk-utility test." *Id*. at 326.

Here, Defendants have moved for summary judgment regarding Kirkland's use of the risk-utility test to prove failure to warn at the time of manufacture and his use of the consumer expectations test to prove failure to warn at the time of manufacture, design defect and any independent strict liability claim he may attempt to bring under the consumer expectations test. Dkt. 52. Defendants also seek summary judgment regarding Kirkland's negligence claim regarding their failure to warn after manufacture. *Id*.

**C.   Failure to Warn or Provide Adequate Instructions**

Under RCW 7.72.030(1), "[a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." The definition of "not reasonably safe," for purposes of a suit alleging failure to warn or give adequate instructions regarding dangers existing at the time of manufacture, is provided by RCW 7.72.030(1)(b):

> A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's

ORDER - 5

harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

In addition, RCW 7.72.030(1)(c) provides the definition of "not reasonably safe" for purposes of allegations of failure to warn or give adequate instructions regarding dangers learned of after the time of manufacture:

A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform product users.

### 1. Proximate Cause

In order to recover under the WPLA for failure to warn or instruct, a plaintiff must must show that defendant's inadequate warnings were the proximate cause of their injuries. RCW 7.72.030(1). To meet the requirements of proximate causation, a plaintiff must put forth evidence of both cause in fact and legal causation. *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 139-42 (1986). "Cause in fact refers to the 'but for' consequences of an act – the physical connection between an act and an injury." *Hartley v. State*, 103 Wn.2d 768, 778 (1985). Legal causation, on the other hand, involves the "determination of whether liability should attach as a matter of law given the existence of cause in fact." *Id.* at 779.

Here, Defendants argue that the Court should grant summary judgment on all of Kirkland's failure to warn claims because he cannot show that any failure to warn on the part of Defendants proximately caused his injuries because he was aware of the open and obvious hazard that caused such injuries. Dkt. 52 at 14-18. Specifically, Defendants maintain that Kirkland "testified that the risks of working around and over newly-formed,

ORDER - 6

molten glass were 'obvious,' and he knew he could be severely burned, such as the injury that occurred here." Dkt. 52 at 15.

In his opposition to the instant motion, Kirkland argues that his "failure to warn" claims are actually based on Defendants' failure to provide adequate instructions to Cameron or J.H. Kelly, LLC ("JH Kelly")[1], "about how to reduce or eliminate the known hazard of workers coming into contact with extremely hot bottles on the conveyor when working over the conveyor, despite expressly acknowledging the need for such instructions in [their] Technical Report regarding Individual Section machines." Dkt. 57 at 11-12. Kirkland contends that the evidence shows that if Defendants had provided Cameron with instructions regarding the need for a protective cover over the conveyor, Cameron would have provided such a cover. Dkt. 57 at 12. To support this contention, Kirkland states that when the need for a protective cover was brought to Cameron's attention following Kirkland's injury, Cameron employees promptly "developed two different devices to protect workers from coming into contact with hot bottles when working over the conveyor." Dkt. 57 at 12; *see* Dkts. 60, Exhs. 9 & 62, Exhs. 16, 17. In addition, Kirkland maintains that Defendants' argument that the open and obvious nature of the hazard in this case precludes a finding of proximate cause is not controlling because the cases they rely upon did not involve a "manufacturer's failure to provide instructions about how to eliminate or reduce the obvious hazards involved with the use of a product." Dkt. 57 at 13. In the cases relied upon by Defendants, the courts reasoned that a warning would have served no purpose and therefore, the lack of warning was not the proximate cause of the injury. *See* Dkt. 52 at 14-18 (citing *Soproni*, 137 Wn.2d at 326; *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn.2d 248, 257; *Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 839 (1995)). According to Kirkland, "[h]ere, in contrast, if

---

[1] JH Kelly was the engineering, procurement, and construction general contractor for the Cameron project. Dkt. 52 at 2.

ORDER - 7

[Defendants] had provided instructions regarding the need for a protective cover over the conveyor, the evidence indicates that Cameron Glass would have provided a protective cover (as they did after Mr. Kirkland was injured), and that Mr. Kirkland's injuries would have been prevented." Dkt. 57 at 13.

### a. **Federal Rule of Evidence 407**

In their reply, Defendants argue that the evidence presented by Kirkland regarding Cameron's subsequent remedial measures in developing the protective covers is inadmissible under Rule 407 of the Federal Rules of Evidence and therefore should not be considered by the Court on summary judgment. Dkt. 69 at 4-5. Rule 407 states that

> [w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.

However, the Ninth Circuit has explicitly held that Rule 407 "only applies to a *defendant's* voluntary actions." *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 888 (1991) (emphasis in original) (citing *Causey v. Zinke (In re Aircrash in Bali, Indonesia)*, 871 F.2d 812, 816-17 (9th Cir. 1989)). The Ninth Circuit explained that

> Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. *Gauthier v. AMF, Inc.*, 788 F.2d 634, 637 amended, 805 F.2d 337 (9th Cir. 1986). A nondefendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. *Causey*, 871 F.2d at 816-17.

*Pau*, 928 F.2d at 888. Here, the evidence presented by Kirkland relates to subsequent remedial measures taken by Cameron, not Defendants. Therefore, the Court concludes that such evidence is not precluded by Rule 407.

### b. **Open and Obvious Hazard**

Although Defendants maintain that the open and obvious nature of the hazard at issue in this case precludes a finding of proximate cause, the Court disagrees. As argued by Kirkland, the cases cited to by Defendants in support of this contention did not involve

ORDER - 8

facts analogous to those present here.  While the courts in *Soproni*, *Hiner*, and *Anderson* held that proximate cause was lacking and took into account the open and obvious nature of the hazard involved in those cases, the court's conclusion in each case was based on the fact that there was insufficient evidence to show that the plaintiff would have heeded any warning if one were given.  137 Wn.2d at 325-26; 138 Wn. 2d at 256-58; 79 Wn. App. 839-40.  In other words, the courts held that there was no evidence to show that but for the lack of warning, the injury would not have occurred.  *Id*.  Here, Kirkland has presented evidence, in the form of Cameron's subsequent remedial measures, that but for the lack of instruction from Defendants to Cameron, Cameron would have used protective covers and Kirkland's injury would have been prevented.  Dkts. 60, Exh. 9 & 62, Exhs. 16, 17.  Defendants have presented their own evidence, in the form of Meredith Keller's declaration, that even if Defendants had given instructions to Cameron regarding the need for protective covers, Cameron would not have heeded the instruction.  Dkt. 61-1.  Based on the evidence presented by both parties, the Court concludes that there is a genuine issue of material fact whether Defendants' failure to provide Cameron with instructions was the cause-in-fact of Kirkland's injury.

        **c.     Legal Causation**

Defendants also argue that, regardless of the cause-in-fact, there is no legal causation to support Kirkland's claim.  Dkt. 52 at 15-18.  Washington courts consider legal causation in the context of a number of public policy considerations, such as the ends of justice, importance of precedent, and application of common sense, which stem from the particular facts of the case.  *Anderson*, 79 Wn. App. at 838.  That is, should the law impose liability in this type of situation.  Here, the Court concludes that all of these factors weigh in favor of finding legal causation.  The Court has concluded that Kirkland should be able to present evidence to a jury to support his position that Defendants' failure to give proper instructions to Cameron was a cause-in-fact of his injury.  The

ORDER - 9

Court concludes that public policy supports a finding of legal causation where, as here, Kirkland intends to prove that if Defendants had given proper instructions to Cameron regarding the need for protective covers, such instructions would have been followed and Kirkland's injury would have been prevented.

### d. Conclusion

Because the Court has concluded that proximate cause will be an issue for the jury, Defendants are not entitled to summary judgment of Kirkland's failure to warn claims based on a lack of proximate cause.

### 2. Risk Utility Test

Under the balancing test contained in RCW 7.72.030(1)(b), also known as the risk-utility test, the trier of fact must balance the likelihood that the product would cause the harm complained of, and the seriousness of that harm, against the burden on the manufacturer of providing an adequate warning or instruction. *See Ayers*, 117 Wn.2d at 765. Here, Defendants maintain that the Court should grant summary judgment of Kirkland's failure to warn claim based upon a risk-utility test because he cannot show proximate cause. However, because the Court has concluded, as discussed above, that proximate cause will be an issue for the jury, the Court also concludes that Defendants are not entitled to summary judgment of Kirkland's failure to warn claim based on a risk utility test.

### 3. Consumer Expectations Test

The consumer expectations test can be used to prove failure to warn or design defect claims under the WPLA and also provides an independent basis for determining that a product is "not reasonably safe" for purposes of a WPLA claim:

> In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer.

RCW 7.72.030(3).

Defendants argue that Kirkland cannot satisfy the consumer expectations test to bring any of his claims under the WPLA "where the 'ordinary consumer' for purposes of the test is a person with the knowledge and background of [Kirkland], who admits that he was aware of the open and obvious hazard." Dkt. 52 at 12.  Kirkland maintains that Defendants' description of an "ordinary consumer" is incorrect in that the WPLA does not define "ordinary consumer" and that "Washington courts have interpreted the term according to its plain meaning – an ordinary consumer, not a consumer with specialized knowledge or experience." Dkt. 57 at 17 (citing for example *Soproni*, 137 Wn.2d at 327; *Eriksen v. Mobay Corp.*, 110 Wn. App. 332, 344 (2002)).  "In other words, it is for the jury, as members of the community, to determine what the ordinary consumer would expect in terms of product safety." Dkt. 57 at 17-18.

Although the Court agrees with Kirkland that it is a question for the jury to determine what the ordinary consumer would expect in terms of product safety, it also agrees with the court's reasoning in *Kerzman v. NCH Corp.*, 2007 WL 765202 (W.D. Wash. 2007) in holding that "Washington courts look to the class of persons expected to use the product in determining the adequacy of the warning." *Id*. at *4.  Specifically, the court held that

> at trial Defendant may offer evidence to support a jury instruction explaining the "ordinary user" test as taking into account the relative class of persons that buy and use this product. Evidence to support such an instruction would necessarily include evidence that Defendant sold [its product] only to carpet cleaning professionals, or others similarly situated, and not to the public at large.

*Id*.  Here, even assuming the definition of ordinary consumer in this case will take into account the relative class of persons that buy and use Defendants' product, the Court concludes that Defendants have not shown that Kirkland cannot prove its product liability claims by presenting evidence that Defendants' product was not reasonably safe based on what the ordinary consumer would expect.  Therefore, Defendants are not entitled to

ORDER - 11

summary judgment of Kirkland's failure to warn claims based upon the consumer expectations test.

**D.  Design Defect**

Here, for purposes of design defect, Defendants only seek summary judgment of Kirkland's design defect claim under the consumer expectations test. Dkt. 52 at 1 (stating that Defendants do not seek summary judgment of Kirkland's design defect claim under the risk utility test). Under the consumer expectations test, "a plaintiff need not prove that a product is defective as a separate matter." *Lenhardt v. Ford Motor Co.*, 102 Wn.2d 208, 211 (1984) (internal citations omitted). "Recovery is allowed if the jury determines that the product is dangerous to an extent beyond that which is contemplated by the ordinary consumer." *Id*.

Here, because the Court has concluded, as discussed above, that whether Defendants' product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer is an issue for the jury, the Court also concludes that Defendant is not entitled to summary judgment of Kirkland's design defect claim based upon the consumer expectations test.

**E.  Separate Claim Under the Consumer Expectations Test**

The consumer expectations test, as stated in RCW 7.72.030(3), provides an independent basis for liability under the WPLA. *Ayers*, 117 Wn.2d at 765 (citing *Falk*, 113 Wn.2d at 654). Thus, even if a plaintiff fails to otherwise establish a claim under the WPLA, "the plaintiff may nevertheless establish manufacturer liability by showing the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." *Falk*, 113 Wn.2d at 654.

Here, because the Court has concluded, as discussed above, that proximate cause and whether Defendants' product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer are issues for the jury, the Court also concludes

that Defendants are not entitled to summary judgment of any claim Kirkland may bring under RCW 7.72.030(3).

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendant's motion for summary judgment (Dkt. 52) is **DENIED**.

DATED this 14th day of April, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 13